Benjamin E. Lowenthal (Haw. Bar No. 8645)
Law Office of Benjamin E. Lowenthal, LLC
1001 Bishop Street, Suite 2210
Honolulu, Hawaiʻi 96813
Telephone: (808) 766-8247
Email: benjamin@bellawyer.com

Attorney for Defendant
Jamey Denise Jackson

In the United States District Court

District of Hawaiʻi

| | |
|---|---|
| In re: Public First Law Center,<br><br>Movant. | 1:26-mc-250-JMS<br>(22-cr-93-JMS)<br><br>Response to Motion to Unseal Sentencing Records; Declaration of Jamey Denise Jackson; Exhibits A-B.<br><br>Hon. Judge J. Michael Seabright |

**Response to Motion to Unseal Sentencing Records**

Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Relevant Background

Ms. Jackson and her abusive ex-husband move to Hawai‘i and are prosecuted for defrauding several investors out of millions of dollars. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

[redacted] . . . . . . . . . . . . . . . . . . 2

[redacted] . . . . . . . . . . . . . . . . . . . . . . . 4

Discussion

Extending the qualified First Amendment right of public access to ECF 264 and the sentencing memoranda does not automatically trigger unsealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. Sealing the documents serves the two compelling interests of [redacted] . . . . . . . . . 5

2. Ms. Jackson's compelling interests would be harmed if they are exposed to the public . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2.1 [redacted] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2.2 Ms. Jackson's privacy interests [redacted] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3. Redacting the sentencing memoranda and limiting access is a reasonable alternative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Introduction

Public First Law Center claims that the qualified First Amendment right to public access covers all "sentencing proceedings and related documents" and that a local rule protecting sensitive materials is unconstitutional. Based on that, PFLC wants the Court to unseal three documents: the government's motion filed under CMF/ECF 264, the government's sentencing memorandum, and Jamey Denise Jackson's sentencing memorandum. PFLC misses a crucial step.

Even if the qualified right to public access covered the documents, unsealing them could harm important compelling interests. *United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). For Ms. Jackson's [redacted], PFLC's motion should be denied in part. Instead of unsealing the documents, redacted copies of the sentencing memoranda should be available for viewing in the courthouse after she is released from prison. That is the better alternative. *Doe*, 870 F.3d at 998.

## Relevant Background

**Ms. Jackson and her abusive ex-husband move to Hawaiʻi and are prosecuted for defrauding several investors out of millions of dollars.**

Jamey Denise Jackson was married for twenty years to her ex-husband, Curtiss. PSR at 43 ¶202. Curtiss often told Ms. Jackson about his uncle in the mob. *See* Declaration of Jamey Denise Jackson at 3 ¶12. Curtis was physically abusive, beat her on several occasions, and was manipulative and domineering. PSR at 43 ¶202 & 43-44 ¶204.

They moved to Hawai‘i in 2010. Curtiss, with Ms. Jackson's help, set up a boating company called Semisub. It resulted in an elaborate, multi-million-dollar fraud involving several victims, government agencies, and branches of the armed forces.

Curtiss continued to exert unhealthy control over Ms. Jackson. A prime example was presented at sentencing. During their marriage, [redacted] He used the pictures to embarrass and control her when she recovered. And Ms. Jackson suspected that he was tampering with her intravenous drip. *Id.* at 13. Ms. Jackson separated from Curtiss in 2020. In 2021, she moved to the mainland and left Curtiss in Hawai‘i. PSR at 43 ¶202-203.

[redacted]

[redacted]

[redacted]

[redacted] Curtis responded by sending her a clip from the television show "The Sopranos," in which a person is brutally murdered, with a caption that reads "Death of FBI Informants." *Id.* at 20 ¶73; Tr. 05/06/2024 (22-cr-093JMS ECF 374) at 74.

Based on that threat, Curtiss was indicted with obstruction. To authenticate the video clip at trial, Ms. Jackson had to testify as a government witness. Tr. 05/06/2024 at 71-77. Curtiss personally cross-examined her. His first question reminded her about his uncle:

CROSS-EXAMINATION

BY MR. JACKSON:

Q Hi. Do you recall me telling you that my uncle was a mob boss from Newark, New Jersey?

A Yes, sir.

*Id.* at 77.

Curtiss then recalled her as one of his own witnesses. Ms. Jackson told the jury that she was "very much afraid" of him. *Id.* at 159. She got to explain why:

A Why I was afraid of you, that's the question?

Q Yes, ma'am.

A Well, Curtiss Jackson, you tried to take my life in the hospital.

Q Oh.

Tr. 05/07/2024 at 8. Curtiss was found guilty as charged and sentenced to 13 years imprisonment.

Ms. Jackson was also sentenced. The government moved [redacted] She was sentenced to 24 months and two years of supervised release.

[redacted]

Ms. Jackson is now serving her sentence at FPC Alderson. *See* Jackson Decl. at 1 ¶1. Like many facilities, [redacted] FPC Alderson is no different. *See id.* at 2 ¶¶5-11. Ms. Jackson's experience tracks the extensive studies about the harm [redacted] in the federal system. *See* Exhibit B.

Now, PFLC has moved to unseal the government's motion and the sentencing memoranda. Ms. Jackson and the government oppose the motion.

## Discussion

### Extending the qualified First Amendment right of public access to ECF 264 and the sentencing memoranda does not automatically trigger unsealing.

PFLC argues that because there is a qualified First Amendment right of public access to ECF 264 and the sentencing memoranda, Criminal Local Rule 5.2(a)(9), which authorizes the sealing of motions that detail a defendant's

cooperation is unconstitutional, and the documents should be unsealed. PFLC Motion at 12.[1] The analysis is incomplete.

Even if PFLC had established that the right of public access attached to the documents here,[2] sealing or "closure" is still warranted when "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Doe*, 870 F.3d at 998.

**1. Sealing the documents serves the two compelling interests of [redacted].**

Two important compelling interests are served in keeping the documents sealed: [redacted], *Doe*, 870 F.3d at 998-99, and her right to protect private medical information in the documents. *Civil Beat Law Center for Public Interest, Inc. v. Maile*, 117 F.4th 1200, 1210 (9th Cir. 2024); *Abbey v. Hawaii Employers Mut. Ins. Co. (HEMIC)*, 760 F. Supp. 2d. 1005, 1013 (D. Haw. 2010) ("The need to protect medical privacy qualifies as a 'compelling reason' that

---

1 The page numbers refer to the numbers in pdf format.

2 The Ninth Circuit has not determined if the qualified right attaches to government motions [redacted]. *See Doe*, 870 F.3d at 997-98 (resolution of threshold issue "unnecessary" because the defendant's safety was a compelling interest that could be harmed by exposing the level and extent of defendant's cooperation to the public). *See also United States v. Kincaid*, 119 F.4th 1074, 1084 (6th Cir. 2024) (noting Ninth Circuit does not "provide[] any analysis of cooperation agreements or any reasoning as to why the First Amendment might provide a right of access to these documents.").

overcomes the presumption of public access to judicial records."); *see also Warta v. Porter, McGuire, & Kiakona, LLP*, 622 F. Supp. 3d 971, 995 (D. Haw. 2022) (finding "compelling reasons" to seal filings containing "confidential medical information" that may not be privileged). The sealed materials also refer to the PSR, another sealed document.

**2. Ms. Jackson's compelling interests would be harmed if they are exposed to the public.**

**2.1** [redacted]

Ms. Jackson is in prison. [redacted]. The Federal Judicial Center has conducted surveys and reports [redacted].[3] The report "sheds considerable light on the dangers faced by those who agree to cooperate with government investigations." *Doe*, 870 F.3d at 999.

Studies revealed that prisoners [redacted]

The report has prompted the Committee on Court Administration and Case Management to guide District Courts in how to handle sensitive documents about

[3] The final report can be viewed at [redacted]

[redacted]. The CACM Committee recommends that the materials sought by PFLC remain under seal:

[redacted]

Ex. B at 8.

Ms. Jackson's [redacted] *See* Jackson Decl. at 2 ¶¶5-11. Inmates in her prison facility are on the lookout for [redacted] *Id.* at ¶5. And once they have determined [redacted], they "stigmatize" that person. *Id.*

Unsealing the materials allows anyone to look up the docket, [redacted]. Sealing the materials reduces the risk that the inmates will discover [redacted].

Nor does the risk dissipate upon her release. [redacted] *Id.* at 6. [redacted] *Id.*

Curtiss knew she [redacted] threatened her. The threat brought on the additional charge of obstruction against Curtiss. Undeterred, Curtiss used to the trial as a *pro se* litigant to intimidate Ms. Jackson by reminding her that his "uncle was a mob boss from Newark, New Jersey." Tr. 05/06/2024 at 77.

Ms. Jackson testified that she was "very afraid" of her ex-husband. *Id.* at 159. Threats like this are sufficient to justify closure. *See Doe*, 870 F.3d at 999 (direct threats are not required to justify closure).

**2.2 Ms. Jackson's privacy interests [redacted].**

Ms. Jackson's privacy interests are also harmed by unsealing the sentencing memoranda. Her sentencing memorandum includes a [redacted] ECF 336 at 67. His diagnosis [redacted] should not be exposed. The memorandum also discusses her cancer diagnosis, her prescriptions, and pictures from her hospitalization. Ms. Jackson is sensitive about her privacy. *See* Jackson Decl. at 3 ¶13. This sensitive medical information should remain protected and out of the public sphere.

**3. Redacting the sentencing memoranda and limiting access is a reasonable alternative.**

Ms. Jackson agrees with the government that there are no reasonable alternatives to unsealing ECF 264. But as for the sentencing memoranda, a reasonable alternative would be limited access and redacting information to protect Ms. Jackson's compelling interests and prevent disclosure of other sealed materials like the PSR. *See* Exhibit A.

Location and timing of access is another factor. Ms. Jackson is scheduled to be released no later than February 13, 2027. The redacted copies should be disclosed when the risk of retaliation from inmates is reduced by her release from prison. And even then, the access should not be made available online and limited only to retrieving the redacted documents at the courthouse.

**Conclusion**

PFLC's motion should be denied in part. Sealing the three documents serves compelling interests that would be harmed if they were exposed to the public. The reasonable alternative is limited release of redacted sentencing memoranda. And to that extent, the motion should be granted in part.

Dated: August 12, 2026.

/s/ Benjamin Lowenthal
Benjamin E. Lowenthal
Attorney for Defendant
Jamey Denise Jackson

In the United States District Court

District of Hawaiʻi

| | |
|---|---|
| In re: Public First Law Center,<br><br>Movant. | 1:26-mc-250-JMS<br>(22-cr-93-JMS)<br><br>Declaration of Jamey Denise Jackson.<br><br>Hon. Judge J. Michael Seabright |

**Declaration of Jamey Denise Jackson**

I, Jamey Denise Jackson, declare that the following is true and correct based to the best of my knowledge and belief:

1. I am imprisoned at Federal Prison Camp, Alderson in Alderson, West Virginia. Communication with my attorney has been through the telephone.
2. This declaration was prepared with the assistance of my lawyer. My lawyer typed this declaration, but the factual assertions in my declaration are mine and mine alone.
3. I am in custody at a Bureau of Prisons facility. While I hope to be released sooner, I am not scheduled to finish the custodial part of my sentence until February 13, 2027.
4. [redacted]

5. When I arrived here, inmates asked me about my sentence. They also learned that Curtiss Jackson's sentence was longer than my own and [redacted]

6. [redacted]

7. I believe that I have become stigmatized [redacted]. Once I became stigmatized, word got around to other inmates in the compound.

8. About a month ago, my bunkmate attacked me. I was looking out the window when she jumped on me and punched me in the stomach several times. I tried to get away. She came after me. Other inmates heard my screams.

9. My bunkmate did not say anything when she attacked me, but I suspect it is because of my stigma [redacted].

10. I was moved to another unit. I told them I was afraid. The administrators told me that the other option was to transfer to a non-federal facility in West Virginia and live in the special housing unit. I do not want to be in solitary confinement or isolation because I helped the government.

11. [redacted]. We, the inmates, have access through friends and family to news stories, social media, and other public sources of information. From those sources, we have learned details about each other's cases and what they have done.

12. I am also concerned about Curtiss Jackson. He is from Newark, New Jersey, and while we were married, he would tell me that his uncle and his family were in the mob. I do not want him or anyone in his family to learn [redacted]

13. My lawyer tells me that the sentencing memorandum contains details about [redacted] I have always wished to keep that private and will continue to keep that private.

14. Again, I am concerned about Curtiss. He is an abusive man. If he finds out about my [redacted] diagnosis, I am concerned he will find a way to use that against me.

15. My lawyer has read this declaration to me in its entirety, and I have authorized my lawyer to affix an electronic signature on this declaration.

16. My lawyer has also sent a copy of this declaration for me to sign. It is my understanding that if I cannot get it back to him on time to include it in the filing, he will attach an unsigned copy.

Dated: July 31, 2026.

s/ Jamey Denise Jackson
Jamey Denise Jackson