ROBERT BRIAN BLACK 7659
BENJAMIN M. CREPS 9959
DÉVI DIANA STONE CHUNG 12173
Public First Law Center
700 Bishop Street, Suite 1701
Honolulu, Hawaiʻi 96813
brian@publicfirstlaw.org
ben@publicfirstlaw.org
Telephone: (808) 531-4000

*Attorneys for Public First Law Center*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE: PUBLIC FIRST LAW CENTER | MISC. NO. 26-250-JMS<br>[CR NO. 22-CR-93-JMS]<br><br>REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO UNSEAL SENTENCING RECORDS [DKT. 10] AND JAMEY DENISE JACKSON'S RESPONSE TO MOTION TO UNSEAL SENTENCING RECORDS [DKT. 14] |

**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO UNSEAL SENTENCING RECORDS [DKT. 10] AND JAMEY DENISE JACKSON'S RESPONSE TO MOTION TO UNSEAL SENTENCING RECORDS [DKT. 14]**

The Government and Defendant Jamey Denise Jackson (Ms. Jackson) (collectively, Parties) concede that complete sealing of their respective sentencing memoranda (*United States v. Jackson*, No. 22-CR-93-JMS Dkt. [*Jackson* Dkt.] 335, 336) is unnecessary. Nonetheless, both oppose unsealing *Jackson* Dkt. 264.

The facts of this case, however, do not warrant continued sealing, nor any limitations on access. Ms. Jackson testified in open court against her co-defendant, Curtiss Jackson, and her cooperation is extensively discussed in public filings. Public First Law Center (Public First) requests that this Court unseal *Jackson* Dkt. 264, 335, and 336.[1]

*Sentencing memoranda*: Neither the Government nor Ms. Jackson argue for sealing the entirety of their respective sentencing memoranda.[2] Dkt. 10 at PageID.29-30 n.3; Dkt. 14 at PageID.75-76. Portions of the sentencing memoranda that reference *Jackson* Dkt. 264 are addressed below. The only other question is reference to Ms. Jackson's mental health issues and her cancer diagnosis. Dkt. 14 at PageID.75.

Public First does not object to redacting specifics (*e.g.*, diagnosis) concerning Ms. Jackson's mental health issues. But the Court should not remove all reference to mental health concerns because those concerns factored in her sentence. *Jackson* Dkt. 355 (sentencing transcript) at PageID.3150, 3154 (counsel

[1] Neither the Government nor Ms. Jackson attempt to defend the constitutionality of the mandatory sealing required by Crim. LR 5.2(a)(9). Dkt. 1 at PageID.10-12.

[2] Although the Government and Ms. Jackson concede that redactions are appropriate, they did not publicly file redacted versions. *See* LR 5.2(c); Crim. LR 5.2(b)(1)(C), 32.2(e). Without access to the proposed redactions, Public First lacks information to fully assess the nature of the Government's and Ms. Jackson's purported basis for sealing portions of the sentencing memoranda and would reserve any right to contest specific redactions.

arguing for downward departure based on prior abuse, trauma, and mental health concerns), 3162 (court's observation that "there are mental health issues that really need to be addressed"), 3168 (imposing special conditions of supervised release for mental health treatment), 3174 (adding Bureau of Prisons recommendation for mental health treatment); *see Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Maile*, 117 F.4th 1200, 1211-12 (9th Cir. 2024) (court records cannot be sealed simply because the records have medical or health information). Similarly, Public First does not object to redacting the specific medical information identified by Ms. Jackson's opposition—*i.e.*, prescriptions or photographs of her hospitalization. Dkt. 14 at PageID.75. But broader discussion of her cancer diagnosis in the sentencing memoranda should not be redacted. *See Jackson* Dkt. 355 at PageID.3154, 3162.

*Downward Department Motion*: First, Public First has no obligation to prove access to the Government's downward departure motion for Ms. Jackson. There is a "strong presumption of openness" when, as undisputed here, the First Amendment attaches to a proceeding. *Civil Beat Law Ctr.*, 117 F.4th at 1211-12 (citing *United States v. Doe*, 870 F.3d 991, 997 (9th Cir. 2017)).

> Consistent with the presumed right of access to court proceedings and documents under the first amendment as articulated in *Press-Enterprise I*, the party seeking access is entitled to a presumption of entitlement to disclosure. It is the burden of the party seeking closure, here Wolsky, to present facts supporting closure and to demonstrate that available alternatives will not protect his rights.

*Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1466-67 (9th Cir. 1990). Ms. Jackson purports to fault Public First for not addressing the elements of the constitutional right of public access. Dkt. 14 at PageID.68. And the Government claims that sealing is warranted because Public First did not prove that Ms. Jackson's cooperation was published by news media. Dkt. 10 at PageID.33. It was not Public First's burden on the motion to unseal to guess what the Parties may attempt to prove as a basis for sealing—which is identified for the first time in their oppositions.

Second, Ms. Jackson's safety concerns in identifying her as a cooperator do not rise to the level of requiring sealing the Government's motion advocating for a substantial downward departure from the Sentencing Guidelines. The Ninth Circuit has long rejected vague safety concerns from cooperators as a basis for sealing. *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825-26 (9th Cir. 1985) (Rule 35 motion based on cooperation); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1467 (9th Cir. 1990) (plea agreement with cooperation language); *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) (plea agreement with cooperation addendum). The Parties instead rely on *Doe*.

In *Doe*, based on the case-specific facts shown by the defendant, the Ninth Circuit held that sealing was warranted. 870 F.3d at 998-1000. In that case, Doe cooperated with the government to provide information regarding nine members of

a large, wealthy, international drug-trafficking cartel. *Id.* at 998-99. Those dangerous individuals had no idea that Doe was cooperating with the government. *Id.* ("jeopardizing his safety if his cooperation became public").

In contrast, here, there is no vast violent enterprise with the means and motive to harm Ms. Jackson if only it knew about her cooperation in the case against her ex-husband co-defendant. Ms. Jackson publicly testified against Curtiss Jackson on behalf of the Government.[3] *Jackson* Dkt. 225; *see Jackson* Dkt 355 at 27. ("[Y]ou were very hostile towards Mr. Jackson on the witness stand. You were about as hostile as any witness I've seen in this sort of situation."); *see also Jackson* Dkt. 81 (plea agreement outlining Ms. Jackson's obligation to "fully cooperate with the United States" including trial testimony). Her cooperation led to additional charges against Curtiss Jackson. *E.g.*, *Jackson* Dkt. 126 at PageID.716 (alleging witness tampering by Curtiss Jackson as it concerned Ms.

[3] The Government claims that news media must publicize an individual's cooperation. First, news coverage is an arbitrary basis to restrict the public's constitutional right of access; the media do not have special access or special rights to publicize court proceedings. *E.g.*, *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 508 (1984) ("the sure knowledge that *anyone* is free to attend"). Second, the Fourth Circuit case that the Government cites is inapposite. In that case, the defendant sought to seal his own record; there was no third party expressing an interest in his case. *United States v. Doe*, 962 F.3d 139, 151 (4th Cir. 2020). Lastly, the media did publicly reference Ms. Jackson's cooperation. *E.g.*, Peter Boylan, *Man, Ex-Wife Sentenced in $29M 'Semisub' Scam*, Honolulu Star-Advertiser (Aug. 7, 2025) (referencing Curtiss Jackson's actions toward Ms. Jackson "after learning that she was about to cooperate with the [FBI]").

Jackson); *accord Jackson* Dkt. 355 at PageID.3148-49 (Government: "Her cooperation post-indictment but pre-superseding indictment led to additional charges that could be brought against Curtiss Jackson."). Her cooperation was critical at Curtiss Jackson's trial. *E.g.*, *Jackson* Dkt. 355 at PageID.3164 (Court: "I think the government has made it clear that they viewed your testimony as very important, especially after I would not admit that tape that – that it became important for you to testify to get that tape into evidence. And you did it."). And the downward departure motion and the Government's and Ms. Jackson's advocacy in sentencing memoranda concerning her cooperation had a significant impact on her sentencing. *Compare id.* at PageID.3143 ("advisory guideline range of 78 to 97 months"), *with id.* at PageID.3166 ("sentence is 24 months"); *accord id.* at PageID.3164 (Court: "So going back to the cooperation, you know, I do give you great credit for that."), 3165-66 (Court: "I think your cooperation was extremely important").

Curtiss Jackson—the Parties' proffered safety threat—is well aware of Ms. Jackson's cooperation. If there is a threat to Ms. Jackson from Curtiss Jackson, that threat exists irrespective of granting this motion.[4] There is no evidentiary

---

[4] Ms. Jackson argues that the threat extends beyond Curtiss Jackson because he says he has an uncle in New Jersey who is a "mob boss." Dkt. 14 at PageID.70. There is no evidence that this uncle exists, is still alive, and has the capacity to harm Ms. Jackson; Curtiss Jackson's question during trial is not evidence. And

basis to conclude that unsealing these documents will change anything about Curtiss Jackson's intent toward Ms. Jackson. *E.g.*, *Doe*, 870 F.3d at 998 ("The court must not base its decision on conclusory assertions alone, but must make specific factual findings."). Moreover, this Court already observed—without diminishing Ms. Jackson's expressed fear of harm—that Curtiss Jackson does not pose a safety threat to Ms. Jackson. *Jackson* Dkt. 355 at PageID.3165 ("I don't think [Curtiss] would have killed you. I don't think he has that in him."); *accord Jackson* Dkt. 354 at PageID.3115 ("[H]e threatened his wife with something that I am not saying that Mr. Jackson intended to carry through on. I'm not going to go that far. I don't have any evidence he intended to kill his wife.") And, ultimately, he will be over eighty years old when released from prison.

Ms. Jackson further argues that there is a generic threat to cooperators in prison. Dkt. 14 at PageID.73-74. She relies on the 2016 survey and interim guidance from the Committee on Court Administration and Case Management. First, that survey and guidance are not a substitute for the case-specific proof required to justify sealing under the First Amendment. *Doe*, 870 F.3d at 1002 (recognizing, after review of the 2016 report, that "a presumption of closure for all court filings would not be consistent with our circuit's case law").

---

regardless, that uncle would already be aware of Ms. Jackson's cooperation against his nephew whether or not these records are unsealed.

Second, that 2016 interim guidance was not the final word on the subject. In December 2017, the Judicial Conference's Advisory Committee on Criminal Rules refused to advance proposed rules that would implement guidance based on the 2016 survey. Among other concerns, some members "opposed a solution based on secrecy in judicial proceedings, and described the CACM amendments as shifting from the current culture of transparency to a culture of secrecy." Advisory Comm. on Crim. Rules, *Report of the Advisory Comm. on Crim. Rules* (Dec. 8, 2017), *in* Comm. on Rules of Practice & Procedure at 122 (Jan. 4, 2018).

Despite similar arguments about the 2016 interim guidance by the Government and defendants in other cases, no court in this District has concluded that such generic arguments about cooperators—unconnected to case-specific safety concerns—present sufficient compelling reason to seal a motion for downward departure. *In re Public First Law Ctr.*, No. 26-MC-198-JAO-RT (Alan Rudo); *In re Public First Law Ctr.*, No. 26-112-DKW-KJM (Kaulana Freitas); *In re Civil Beat Law Ctr. for the Pub. Interest*, No. 23-CV-175-SOM-RT (Ty Cullen); *accord In re Civil Beat Law Ctr. for the Pub. Interest*, No. 21-MC-298-DKW-KJM, 2021 U.S. Dist. LEXIS 202418 (D. Haw. Oct. 14, 2021) (Norman Akau) (unsealing plea agreement after analyzing concerns about cooperators, including the 2016 guidance); *see also In re Civil Beat Law Ctr. for the Pub. Interest*, No. 22-MC-124-JMS (Daniel Sellers) (unsealing downward departure motion, but no

argument by the parties about the 2016 interim guidance). That is consistent with the Ninth Circuit precedent in *Doe*, *Copley Press*, *Oregonian Publishing*, and *CBS*.

Even if there were legitimate safety concerns for Ms. Jackson (which the Parties have not met their burden to prove), the Parties have not shown that other alternatives to restricting public access are inadequate.[5] *Oregonian Publ'g*, 920 F.2d at 1467 ("demonstrate that any available alternatives would not protect his interests"). The Court must consider all options. *Id.* at 1467 n.1 ("The district court might have considered . . . disclosing the agreement but placing Wolsky in a witness protection program, or recommending that Wolsky be placed in protective custody while in prison."); *see also Copley Press*, 518 F.3d at 1028-29 (referring to the government taking steps to reduce the danger to a cooperator's safety before disclosing his cooperation). Any purported risk to Ms. Jackson may be mitigated without restricting public access.

Public First respectfully requests that the Court grant the motion to unseal.

DATED: Honolulu, Hawaiʻi, August 20, 2026

/s/ Robert Brian Black
ROBERT BRIAN BLACK
BENJAMIN M. CREPS
DÉVI DIANA STONE CHUNG
*Attorneys for Public First Law Center*

[5] The alternatives offered by the Parties (*e.g.*, redaction or courthouse access) are still restrictions on public access that must be justified by specific factual findings of compelling interest, substantial probability of harm, and no narrower alternative.